No. 32,460

THE INTERNATIONAL SHOE COMPANY, *Appellee*, v. WILSON & Co., *Appellant*.

(53 P. 2d 486)

Opinion filed January 25, 1936.

*Arthur J. Stanley*, of Kansas City, *John B. Gage*, of Kansas City, Mo., and *W. R. Brown*, of Chicago, Ill., for the appellant.

*C. W. Trickett*, of Kansas City, *M. W. Borders* and *M. W. Borders, Jr.*, both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: The action was one for damages consequent on sale by defendant to plaintiff of defective sheep skins. Plaintiff recovered, and defendant appeals.

The action was tried by the court. No special findings of fact were requested or made. The court found generally for plaintiff. It was the business of the trial court to determine the credibility of witnesses who testified orally, and to size up fencing, equivocation and evasion. It was the business of the trial court to determine

conflicts in the evidence. This includes discrepancies in the testimony of a particular witness and statements of a witness which would warrant differing inferences. It was the business of the trial court to draw plain inferences from the evidence, and to draw the proper inference from evidence when different inferences might be drawn. It was the business of the trial court to determine weight of evidence. The general finding draws to its support all evidence and all inferences from evidence which would tend to sustain it. The general finding cannot be disturbed by this court if sustained by any substantial evidence, even although there may be much evidence to the contrary. These settled principles of appellate practice in this state are rehearsed for the $n$th time for the benefit of counsel from abroad who do not seem to be familiar with important consequences of their application. Application of the principles will account for the brevity of this opinion in dealing with an abstract of over 500 pages, supplemented by an additional abstract and two counter abstracts.

Wilson & Co. sells sheep skins taken from the carcasses of slaughtered animals, treated in a certain way, and kept in stock for sale to buyers in a form known as pickled skins. The shoe company buys pickled skins, tans them, and from the leather manufactures boots, shoes and footwear. Each company knew what the business of the other was. They had dealt with each other for a number of years previous to the year 1931, and Wilson & Co. had sold to the shoe company, for use in its business, twenty-five or thirty carloads of skins, comprising 40,000 to 50,000 dozen skins.

In July and August, 1931, the shoe company bought of Wilson & Co. three carloads of pickled skins. Wilson & Co. knew the skins were bought by the shoe company to be made into leather, and the prices charged and paid were the prices of sound skins. The skins were delivered and were stored in the shoe company's tannery until they were needed for the purpose of making leather. In the process of tanning the skins, to make leather, defects appeared which rendered most of the skins unsuitable for making leather. Wilson & Co. were notified. Skins apparently sound were sent by the shoe company to various reputable tanneries to be tanned, and the defects uniformly appeared. Skins purchased from other dealers were put through the tanning process with Wilson & Co. skins, apparently sound. The Wilson & Co. skins proved to be defective, while the

others did not. A demonstration test of this kind was made in the presence of a Wilson & Co. tanning expert.

On two occasions Wilson & Co. sent representatives to the shoe company's tannery to investigate facts and conditions, and· there were conferences· between representatives of the two companies. In the course of the investigations and conferences, representatives of Wilson & Co. proposed causes of defects which might exonerate them from liability. Some of the proposed causes were abandoned. All of them, and others advanced at the trial, were eliminated by the evidence given at the trial. ·After examination of skins which had been put through initial processes of tanning, the salesman for Wilson & Co. said those skins looked like glue stock to him. Glue stock consists of skins which are unfit for use and which are sold to glue mills. The result was, Wilson & Co. sold to the shoe company three carloads of skins, most of which were w.orthless to the shoe company.

The shoe company sued for breach of warranty pursuant to custom of the trade, and breach of warranties implied by law. It will be necessary to consider but one kind of warranty implied by law.

The first order was for "spring lambs" and the car was billed to the shoe company as "straight run lambs." The order for the second car was for "current production take-off packer skins." The car was billed to the shoe company as "straight run lambs." The third order was for "current take-off packer pickled skins." The car was billed to the shoe company as "straight run lambs sheep." The skins were accepted and paid for as they were billed. All the skins were pickled skins, and there can be no dispute that pickled straight run lamb skins and pickled straight run lamb and sheep skins were bought and sold.

Sample skins of the first carload were inspected at Wilson & Co.'s plant at the time of purchase. They looked like sound skins. Sample skins of the three carloads were inspected on arrival at the shoe company's tannery. They looked like sound skins. There was abundant evidence that cause of defect did not originate after shipment, while in transit, or while in storage before tanning. The defects were discoverable only in course of the tanning process. That the defects might have been the result of treatment of the skins before shipment was well proved. Therefore, notwithstanding repeated assertions of Wilson & Co. to the contrary, the defects were latent defects.

One of the implied warranties pleaded was that the skins were free from latent defects, not discoverable by inspection. The court does not propose to debate the question whether, under the circumstances, Wilson & Co. could, without liability, ship to the shoe company skins apparently sound, which, when put to use, proved to be valueless because of latent defects.

The foregoing disposes of the merits of this case.

It is contended evidence was improperly received. The whole record considered, liability of defendant was clearly proved by abundant competent evidence. No error affecting defendant's substantial rights was committed in the establishing of damages, and the amount of damages was sufficiently proved.

The judgment of the district court is affirmed.